## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

KEVIN HOYT,

      Plaintiff,

v.                                                                    Case No. 22-cv-10337

STATE FARM FIRE AND CASUALTY
COMPANY,

      Defendants.

_____/

## OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the court is Plaintiff Kevin Hoyt's "Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56" (ECF No. 17.) The motion is fully briefed. Having reviewed the record, the court finds a hearing unnecessary. E.D. Mich. LR 7.1(f)(2). For the reasons provided below, the court will deny Plaintiff's motion.

## I.  BACKGROUND

### A.  The Items in Plaintiff's Grandmother's Barn

Before she passed away on December 8, 2016, Plaintiff's grandmother, Ella Mae Hoyt-Toney, owned a house located at 15380 C Drive South, Fredonia, Michigan (the "Fredonia Property"). (ECF No. 17-2, PageID.247; ECF No.21-2, PageID.437.) Plaintiff said that he considered the Fredonia Property to be a second home (ECF No. 17-2, PageID.247.) Per Plaintiff, with his grandmother's permission, he stored personal items including childhood mementos, clothing, household goods, arts, art tools and supplies, and construction materials and tools, amounting to "four semis" of things, in the barn and yard. (ECF No. 17-3, PaegID.248, 252-53.)

However, Plaintiff's uncle, Linus Hoyt ("Linus"), provided a contrasting testimony. Linus attested that Plaintiff had no permission to store his items at the Fredonia Property. (ECF No. 21-2, PageID.439.) Additionally, Linus said that most of the things kept there belonged to Plaintiff's father, Jerry Hoyt ("Jerry"), and Plaintiff "had nothing really of anything that was worth anything of value." (*Id.*, PageID.439.)

After Hoyt-Toney died, Linus took over the control of her real and personal properties in accordance with her will. (ECF No. 21-5, PageID.526, 527; ECF No. 21-2, PageID.439.) These included the Fredonia Property and its barn, where Plaintiff claims to continue stowing his properties. (ECF No. 21-2, PageID.439; ECF No. 17-3, PageID.253.) Later, when the Fredonia Property was up for sale, Linus stated that on multiple occasions, he asked Plaintiff's father, Jerry, to remove his things from the barn. (ECF No. 21-2, PageID.439, 440.) Plaintiff disputes being told to remove his items. (ECF No. 17-3, PageID.253.) He also attested that he did not give Linus permission to discard his personal property. (ECF No. 17-2, PageID.250; ECF No. 17-3, PageID.253.)

Testimony from other witnesses provide a glimpse into the barn's condition at that time. Linus's wife, Penny Hoyt ("Penny"), stated that the barn[1] had a "musty odor" and contained "a whole lot of stuff that didn't look like it was anything." (ECF No. 21-4, PageID.509.) Plaintiff's aunt, Peggy Eakins, testified that when she visited the Fredonia Property to help get it ready for sale, she saw that the barn[2] was full of cardboard boxes of clothes and yarn. (ECF No. 21-3, PageID.485.) While unsure what else was in there, Eakins did not see anything that was of high value. (*Id.*) She also said that the barn had

---

[1]    The barn is sometimes referred to by the witnesses as the "post building" (ECF No. 21-4, PageID.507.)

[2]    Eakins refers to the barn as the "garage" in her deposition. (ECF No. 21-3, PageID.485.)

a "toxic smell [of] mold and mildew" and "thought [that] there c[ouldn't] be anything good in this room" as it would "be ruined by the mold." (*Id.*)

Eventually, Linus cleaned out the barn with the help of family members and hired workers, who were given some of the articles. (ECF No. 21-2, PageID.448-49, 452.) The rest of the items stored in the barn were burned in a "junk hole." (*Id.*, PageID.452.)

### B. Plaintiff's Claim

According to Plaintiff, in August 2019, Jerry discovered family photographs and other papers in the 'junk hole.' (ECF No. 17-2, PageID.249.) Alerted by his father, Plaintiff allegedly inspected the dugout himself and found pieces of his artwork, mold, and other things in the debris. (*Id.*) Plaintiff also walked to the barn saw that it was empty. (*Id.*) Afterward, Plaintiff called Linus and said that his pictures and personal items were stored in the barn. (ECF No. 21-2, PageID.442.) In response, Linus apologized to Plaintiff and said that he had two men remove the items from the barn and they were "gone." (*Id.*)

At the relevant time, Plaintiff was the named insured on a homeowners insurance policy, number 82-C9-M516-1, issued by Defendant (the "Policy"). (ECF 17-5.) The Policy covers "personal property owed or used by an ***insured*** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty." (ECF No. 17-5, PageID.292) (emphasis in original). The Policy further states that Defendant "will pay for accidental direct physical loss to the [covered personal] property caused by . . .. [t]heft, including attempted theft and loss of property from a known location when it is probable that the property has been stolen." (*Id.*, PageID.298-99.)

3

On August 20, 2019, Plaintiff made a claim of loss with Defendant under the Policy. (ECF No. 17-6, PageID.331.) As support, Plaintiff provided Defendant with a "Sworn Statement in Proof of Loss," dated March 13, 2020. (ECF No. 17-7) In this statement, Plaintiff claimed $17,373.00 for a damaged building that "did not yet have address." (*Id.*, PageID.337.) Plaintiff wrote, "I was building new home that was being fabricated in the building and was to be placed on 7 ½ ac[re] parcel that was to be split off in estate distribution." (*Id.*, PageID.337.) Additionally, Plaintiff sought $107,600.00 of damaged personal property (*Id.*, PageID.337), for which he submitted a 41-page inventory of items that were allegedly disposed (ECF No. 18).

As evidence of ownership of the claimed items, Plaintiff provided Defendant with numerous witness statements, receipts, photographs, a video, an owner's manual for an electric timer clock, and his sworn testimony. (ECF No. 17-6, PageID.334.) However, Linus testified that the items shown in photographs submitted by Plaintiff were not actually located in the barn and he never saw some of the items. (ECF No. 21-2, PageID.442-43.) Additionally, according to Defendant, the items for which Plaintiff was claiming losses were not depicted in the photographs taken by Linus of the barn before it was cleaned out. (ECF No. 21, PageID.418; ECF No. 21-6.)

In December 2020, Defendant sent Plaintiff a letter, in which it stated that it had "no evidence to substantiate that any 'theft' took place," asserted that Plaintiff had not established ownership of the personal property he claimed, and characterized the matter as "an estate settlement dispute." (ECF No. 18-2, PageID.385.)[3]

---

[3]    Subsequently, Plaintiff, through counsel, requested Defendant to reconsider its position. (ECF No. 18-1.) Defendant did not reconsider.

## II.  STANDARD

To prevail on a motion for summary judgment, a movant – here, Plaintiff – must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff bears the initial burden of presenting evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013).

If Plaintiff meets his burden, Defendant – "the nonmoving party [–] must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility' of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Ultimately, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In assessing Plaintiff's motion, the court draws all reasonable inferences from the underlying facts "in the light most favorable to the party opposing the motion" – here, Defendant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit*

*LLC*, 788 F.3d 201, 204 (6th Cir. 2015). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

The parties agree that Michigan law governs the disposition of this case. "Under Michigan law, the insured has the burden of proving coverage." *Am. Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co. of Am.,* 895 F.3d 455, 459 (6th Cir. 2018) (citing Michigan cases). "If the insured demonstrates that the policy provides coverage, then the insurer has the burden of showing that an exclusion provision precludes coverage." *Id.*

There is no dispute that to prove coverage, Plaintiff must demonstrate: (1) the personal property stored in the barn and disposed by Linus was items covered by the Policy; and (2) the disposal of the property from the barn constituted a "theft" under the Policy. (ECF No. 17, PageID.228-37; ECF No.21, pageID.419-25.) Plaintiff argues there is no genuine dispute as to these material facts. The court disagrees.

### A. Covered Items

The Policy covers "personal property owed or used by an ***insured*** while it is anywhere in the world." (ECF No. 17-5, PageID.292) (emphasis in original). Thus, Plaintiff must show that the disposed items that are the subjects of his claim of loss were "owned or used by [him]."

"[T]he ultimate burden of proof of ownership of the property is upon [P]laintiff." *Wolf v. Providence Wash. Ins. Co. of Providence, R.I.,* 333 Mich. 333, 342 (1952). Plaintiff claims that there is no genuine factual dispute that he owns the items for which he seeks insurance proceeds because he "provided to Defendant a plethora of

documentations, including sworn testimony, evidencing his ownership of the claimed property." (ECF No. 17, PageID.228-29.) However, Defendant has proffered evidence to rebut Plaintiff's claim of ownership. *Wolf,* 333 Mich. at 342. First, Defendant offers Linus' testimony that the property in the barn mostly belong to his father, and Plaintiff owns nothing worth of value.

Then, assuming that Plaintiff had valuable personal property stored in the barn, questions of facts remain as to whether Plaintiff had relinquished his ownership of these items. While Hoyt-Toney's will and bequest of her property to Linus do not by themselves establish Plaintiff's lack of ownership (ECF No. 17, PageID.230-31), they put Hoy-Toney's assets, including the Fredonia Property, in Linus' possession and control. It is reasonably inferred from the evidence that after Linus took over, he did not give Plaintiff the right to store his things on the Fredonia Property and that Plaintiff made no effort to reclaim his items. Defendant has thus demonstrated a question of fact as to whether Plaintiff had abandoned his personal property, if any, stored in the barn. *See Ritchie v. Attisha*, No. 351061, 2021 WL 137252, at *3 (Mich. Ct. App. Jan. 14, 2021) (holding that the trial court correctly held that the plaintiff abandoned her personal property when she failed to remove them from the real property after a new party became vested with the title to the real property); *Braafhart v. Braafhart*, No. 171731, 1997 WL 33352764, at *1 (Mich. Ct. App. Apr. 11, 1997) ("Whether [one] abandoned his interest in the property is a question of fact[.]") (citing *Collins v. Collins*, 348 Mich. 320, 327 (1957). "'Abandoned property belongs to no one,' and '[t]he first person to take possession acquires ownership.'" *People v. Thorne*, 322 Mich. App. 340 (2017) (citation omitted). Viewing the evidence in the light most favorable to Defendant, a reasonable

jury can find that Linus took possession of Plaintiff's abandoned personal property and thereby acquired its ownership.

Plaintiff claims that "ownership is not required for Plaintiff to have an insurable interest." (ECF No. 17, PageID.232.) In so doing, Plaintiff relies on *A.B. Petro Mart, Inc. v. Ali T. Beydoun Ins. Agency, Inc.,* 317 Mich. App. 290 (2016). In that case, the named insured – a gas station – and its sole shareholder brought an action to recover the damages to the gas pumps, which were owned by the shareholder. *Id.* at 293. The policy at issue expressly covered the gas pumps, but the insurance company refused to pay the claim, asserting that the named insured did not have an insurable interest in those items because they were owned by the noninsured shareholder. *Id.* at 294-95. The Michigan Court of Appeals rejected the insurance company's argument. *Id.* at 299-300. The court acknowledged that "under Michigan law, an insured must have an 'insurable interest' to support the existence of a valid ... insurance policy." *Id.* at 298 (citation omitted).[4] But, per the court, the named insured's lack of ownership or leasehold interest in the gas pump did not, by itself, "preclude finding an insurable interest." *Id.* In that case, the named insured has a property interest in the insured gas pumps because it "received income and profits from the use of the gas pumps, including the one that was destroyed in the accident." *Id.* at 299-300. *A.B. Petro Mart, Inc.* is inapposite to the present issue. Here, the question is not whether an insurable interest exists to support a valid insurance policy. Indeed, Defendant does not seem to dispute

---

4       This requirement "arises out of the venerable public policy against "wager policies'; which, . . . are insurance policies in which the insured has no interest, and they are held to be void because such policies present insured with unacceptable temptation to commit wrongful acts to obtain payment." *A.B. Petro Mart, Inc.*, 317 Mich. App. at 298 (citations omitted).

that the personal property expressly covered by the Policy (those "owned or used by"
Plaintiff) can be insured, and that the Policy is valid.

More pertinent, however, is Plaintiff's suggestion that he used the assets stored
in the barn (ECF No. 17, PageID.232; ECF No. 23, PageID.585), because, as indicated
above, items "used by an ***insured***" are covered under the plain language of the Policy
(ECF No. 17-5, PageID.292) (emphasis in original). However, Plaintiff, who bears the
burden to prove coverage, has offered no evidence to support his assertion of usage.
Meanwhile, a jury can reasonably infer from the testimony of witnesses – specifically
Penny and Eakins – that the property in the barn had not been used for a while.

Ultimately, as to the question of whether the items claimed to be compensable
were actually owned or used by Plaintiff, Plaintiff has not met his burden to show that
"there is no genuine dispute as to any material fact and [he] is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a). Instead, the evidence, viewed in the light most
favorable to the non-movant, casts doubt on the authenticity of Plaintiff's assertion,
which must be resolved by the jury. *See Wolf,* 333 Mich. at 343 ("The interest of the
witnesses in the subject matter in dispute, their credibility and the weight to be given
their evidence are questions for the jury; and as between direct and circumstantial
evidence their relative convincing power is for a jury.").

### B.  Theft

Additionally, there exists a genuine dispute of material fact on whether a "theft"
occurred. Both parties agree that the term "theft" is not defined in the Policy and must
be accorded "commonly understood meaning." (ECF No. 17, PageID.233; ECF No. 21,
PageID.422.) "[T]o constitute loss by theft under an insurance policy, there must be a

wrongful taking and asportation with intent to deprive the owner of property permanently." *Hoye v. Westfield Ins. Co.*, 194 Mich. App. 696, 702 (1992). "Given its reasonable meaning, the word 'theft' does include larceny by conversion." *Hunter v. Pearl Assur. Co.*, 292 Mich. 543, 546 (1940). "[L]arceny by conversion occurs 'where a person obtains possession of another's property with lawful intent, but subsequently converts the other's property to his own use.'" *People v. Mason*, 247 Mich. App. 64, 72, 634 N.W.2d 382, 387 (2001) (citing *People v. Christenson*, 412 Mich. 81, 86 (1981)).

As an initial matter, a factual question exists as to whether the property for which Plaintiff demands insurance proceeds was taken, asported, or converted. Linus testified that the claimed items shown in Plaintiff's pictures were neither in the barn nor recognized by him. (ECF No. 21-2, PageID.442-43.) Additionally, Defendant asserts that the items claimed by Plaintiff were not shown in Linus' photographs of the barn taken before it was cleaned out, and this is unrefuted by Plaintiff's reply. (ECF No. 21, PageID.419; ECF No.23.) Viewing the evidence in the light most favorable to Defendant, a reasonable jury could find that Linus did not commit an act of theft against the personal property claimed by Plaintiff.

Additionally, the factual questions concerning Plaintiff's ownership of the disposed property preclude the court from determining, as a matter of law, that Linus' action at issue constituted a 'theft' as it is commonly understood. As indicated above, a reasonable jury could find that Plaintiff has abandoned his property, and "abandoned property cannot be the subject of larceny." *Thorne*, 322 Mich. App. at 349 (2017) (citations omitted).

## IV. CONCLUSION

Questions of facts concerning the existence of a covered loss preclude summary

judgment in Plaintiff's favor. Accordingly,

IT IS ORDERED that "Plaintiff's Motion for Summary Judgment Pursuant to Fed.

R. Civ. P. 56" (ECF No. 17) is DENIED.

s/Robert H. Cleland    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 5, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, May 5, 2023, by electronic and/or ordinary mail.

s/Lisa Wagner     /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\NTH\Civil\Working\22-10337.HOYT.MSD.NH.v2.docx